So please step up and identify yourselves. Good morning, Yasmin Nevaeh of the State Appellate Defender. On behalf of Randy Edmonson. Good morning, your Honor, this is Assistant State's Attorney Kula Ponya on behalf of the people of the State of Illinois. We basically know our procedure now. And since it's the only case, we won't restrict you. But just don't decide to make it a day. It's a event. All right. You may proceed. Good morning, your Honors. Good morning, Counsel. May it please the Court. The State charged Randy Edmonson with the first-degree murder of Jose Escobar and the attempt murder of Alberto Rivera. Though the jury found Edmonson guilty of both charges, neither verdict can be relied upon. The first-degree murder verdict is called into question because counsel not only abandoned, but worse, undermined Edmonson's defenses of second-degree murder and self-defense during closing argument. Likewise, the attempt murder verdict is unreliable because the jury was not instructed that the State was required to prove beyond a reasonable doubt that Edmonson specifically intended to kill Rivera and not anyone else in order to prove that he committed attempt murder. I will address the ineffectiveness and jury instruction issues in turn. Your Honor's ineffectiveness argument or claim represents one of first impression. The evidence at trial presented supported both the defenses of second-degree murder and self-defense. Randy Edmonson specifically chose to present both defenses. What about reasonable doubt? Was that a defense? That was certainly a defense, but in this case, Mr. Edmonson, during the instructions conference, indicated his intent to proceed with second-degree murder and self-defense. He confirmed this to the trial court that this was what he wanted to do. As I noted before, the evidence supported the State's evidence against the two defenses. This was a right exclusive to him, a constitutional right exclusive to him that counsel could not undermine. While counsel could, as a matter of trial strategy, choose how to present each of these defenses during closing argument, she could not do what she did, which was to undermine or negate both defenses. My question is, how do you take her logical defense and undermine it and create credibility issues and ethical issues by trying to raise what your defendant alleges he thinks are a defense when there's little or no evidence of what is being raised? If I were a juror and I heard this, I'd say, you're just making things up. I mean, you've got to question what an attorney can do in this situation. He has ethics and professional responsibilities. He cannot just throw them out because the defendant comes up with an imaginary disposition. Even the judge is questionable in this case. To claim there's evidence here sufficient, I don't see it. I respectfully disagree on behalf of Mr. Edmondson. Importantly, it's not just the defense that Mr. Edmondson came up with. It's a defense that was supported by the evidence. What evidence? The evidence of trial. The videotaped statement, the videotaped of the incident itself, shows that a very belligerent, drunken gang member, Jose Escobar, instigated this fight. Mr. Edmondson is seen repeatedly on that videotape trying to de-escalate the situation. He's trying to no avail. Mr. Escobar instigates a fight with Diaz. They move off camera. They're close together. There's a shoving match that ensues. It is plausible that the jury could find, given Mr. Escobar's gang affiliation, his drunkenness, the situation, Mr. Edmondson trying to de-escalate the situation, that Mr. Escobar, I'm sorry, Mr. Edmondson believed in a reasonable or unreasonable belief in the need to defend in self-defense. It's important to remember that there's only some evidence that has to be produced at trial in order to present this defense. Okay. Counsel, even if there was slight evidence, you have a video where you see Escobar and Diaz leave the screen, and then you see Mr. Edmondson follow, right? Correct. And not very shortly thereafter, you hear the first gunshot. It's not like the gunshot came 20 seconds later. It came about two seconds later, once you go off the screen, right? And so, yes, something could have happened in those two seconds that somehow Escobar turned on the defendant and put him in fear of his life, but isn't it at least as likely of a defense to say, well, we don't know who fired the shot because we don't, because it was off camera, and if we actually saw Edmondson with a gun, right, I mean, the video doesn't show him with a gun. They show him reaching for a gun. Why isn't reasonable doubt just, it wasn't him, you got the wrong guy, at least as good of an argument as self-defense? Well, let me back up one moment. We have two defenses that the defendant specifically indicates he wants to present to the jury. So a defendant has the right to abandon a viable second-degree murder defense and go for an all-or-nothing approach. Likewise, he can also abandon an all-or-nothing approach and go for second-degree murder. In this case, it is not just the defendant, going back to Justice Fitzgerald's question, just making something out of thin air. He's requesting these instructions. They're given. Then defense counsel could, as a matter of trial strategy, choose how to present those in closing arguments. And in point of fact, to address your point, she could argue in the alternative. Well, she could. She could. Does that sound like a real convincing thing to say? My claim is, is that he didn't do it. But if he did, it was in self-defense. I mean, yeah, you're allowed to argue it, but is that a, I mean, aren't you, I think Justice Smith was saying it, isn't that putting you at risk of losing credibility with the jury? Aren't they going to roll their eyes when they hear you say that? No, I don't think so. I think the state's burden is clear, that the state's burden of proof. The point being, though, that the defendant has a constitutional right to present the defenses. In a case where the evidence does, and we would support, we would argue that it does support both defenses, then defense counsel cannot completely abandon and usurp and therefore undermine the defendant's chosen defenses. If that constitutional right is to mean anything. The defendant has the right to decide whether to assert an affirmative defense? Absolutely. Not counsel? Not counsel, that is. And who has the right to decide what to emphasize in closing argument? Defense counsel can. Counsel? Right. She can present, how to present those defenses is certainly within her discretion. And in fact, to your point, she can even argue in the alternative. While it may not be the most, if you find it not to be the strongest, but I think the state's burden of proof is known, and it would be certainly, I mean, I think it's credible to argue everything, if she wanted to, as long as those two defenses are being presented to the jury and they're not being undermined. In this case. What case says that you have to present a defense, an affirmative defense, just because you have a jury instruction on it? I think it's a logical extension of the constitutional right to present the defense. That you have to do it? Yeah. Once that defense has been presented, once that defense, in this case, once a jury accepts or once a talker says that the evidence supports this defense, if that right is to mean anything, then defense counsel has to at least not undermine it, not abandon it. In this case, the prosecutor argued at length how the evidence did not support either defense because Escobar was unarmed and because they had only engaged in a shoving match. Now, earlier law has found that neither of those would preclude a finding of self-defense or unreasonable self-defense. Counsel did not respond to any of those arguments that the prosecutor made. The prosecutor also argued correctly that it is the state's burden of persuasion with respect to the mitigated offense of second-degree murder. Counsel didn't respond to that. That's important, not just taking a – she took an all-or-nother. She basically usurped the defendant's constitutional right to present those defenses during closing argument. This is not a case, and to distinguish it from some of the bench trial cases where our courts have found that perhaps she couldn't usurp the defendant's or defense counsel didn't usurp the defendant's right because a limited trial judge is always able to sui sponte, enter a verdict on a lesser mitigated offense or a proper defense. In this case, we have a jury, a jury unversed in the law. They're being told that identity is an issue. The defenses of second-degree murder and self-defense both presuppose that Mr. Edmondson was factually responsible, that he is in fact the one that shot the gun. And in fact, given the consciousness of guilt evidence and the videotape, which clearly shows him there, and we have multiple witnesses who have identified him, we would argue that if trial counsel did do that as a matter of strategy, it would be unsound. And we have to remember that it's unsound strategy that is protected. You raised, you just said something that led me to the question I was going to ask before. Would you be arguing this if it was a bench trial? If it was, it would be a much less, it would be a difficult argument under the bench trial context. Perhaps I would, I just don't know. But to be honest with you, it would be difficult because, as I said, in the bench trial context, those defenses are open. But when a defense counsel is undermining those defense and closing arguments, it's compelling whether in front of a jury or a judge, but particularly in the case of a jury trial where the lay jury basically doesn't have the tools. And in fact, with respect to the lesser mitigated offense, she's abandoning the defendant's burden of persuasion altogether. That is the only opportunity that defense counsel has, I'm sorry, to make that, to advance that, establish that they've met the burden of persuasion. So we would argue that. This was prejudicial. Counsel's failure in this case was particularly prejudicial. It's undisputed, as I indicated, that we have a drunken, high, and belligerent gang member by all accounts instigating an altercation over a perceived slight to his gang. The evidence also establishes that Escobar and Diaz- The altercation was not with the defendant. It was with Diaz. Certainly. And he and Diaz walked away from the defendant. And then the defendant walked to them. It was between Diaz and Diaz's friend. And certainly defense of others is within the realm of self-defense as well. How do you get self-defense from the facts of this case? The defendant was standing behind the two individuals involved in the shoving match. He's standing behind them. The testimony is he reached into the smallest back, walked around in front of the victim, put his gun in his face, and pulled the trigger. Now, where do you get self-defense from that? I would say that we could still get the belief in the need that self-defense, that that force was needed. There was a perception on Mr. Edmondson's part that his friend and this gang member who are close together are about that Escobar could pull out a gun. If you shove my friend, I'm going to blast you. Certainly. The law recognizes we're dealing with a gang member here. We're dealing with someone who refuses to relent. This is a split-second, like Justice Ellis pointed out, it really happened quite quickly. This is a split-second decision. The law recognizes that Escobar doesn't have to pull out a gun, and in fact Escobar doesn't even have to draw blood for Edmondson to be found to have acted in self-defense or in an unreasonable belief in self-defense. Certainly that's plausible. As far as the moving to the side. What about the attempted murder? Sure, certainly. Just one last point, and I'll get to the attempted murder. Everything seems to be very, not as large as you might think, Justice Ellis. It's like, from my understanding, it was like a quick move to the side of the camera where it wasn't taped. But moving on to the jury instruction issue. But the attempted murder. Yes. So what evidence was there? The other gentleman, I can't think of his name, Rivera, right? Rivera. He's running away. And he gets shot how many times? Three or four times? Three times apparently, yes. He got hit three times. Four shots, but whatever. A couple of times while he was on the ground. Yeah, I don't understand. But those shots happened from off camera. We don't know who fired the shots. So we don't know who pulled the trigger from the video, but it sure doesn't look like self-defense. So if you're the trial lawyer and you've got to pick between self-defense, a guy who got shot in the back while he was clearly fleeing, and I didn't do it because nobody actually can ID me as the shooter, which one would you go with? It's not my decision. Again, if my defendant wants to choose to present those two defenses, second-degree murder, and I'll get to the attempt murder verdict because I think the jury instruction issue goes to that better because we have some problems, as I said, with the attempt murder. But certainly, and as I noted, she could argue in the alternative that the evidence failed to establish identity, but to the extent that it didn't, we have a lack of unreasonable belief in the need of self-defense. And it's important to note that that intent to kill, arguably Escobar, doesn't get transferred on to Rivera. But as I said, the evidence with respect to the attempt murder for exactly that point, because it's not on camera, is quite close. And the problem would be jury instructions here. They indicated to the jury that they were to find an intent to kill an individual and did not specify that that individual had to be Escobar, or I'm sorry, had to be Rivera and not Escobar. That's a very important problem, particularly in a case like this where nobody actually sees the shooting of Rivera. And though he's being turned around, it's a tight situation. It's not that big of a hot dog stand, from my understanding. I saw it on the video and from the testimony. And though he's turning away, it all happens quite quickly, as you noted yourself, Justice Ellis. And based upon the factual scenario, this case is more directly similar to Anderson, this court's decision in Anderson. You're basing your theory on Anderson versus Cavazos? Certainly. You make reference to the other individual, but you somewhat confuse one issue. You talk about the name of the person. It's not an element. And then you go on to say specific intent, and it's not specific. In this case, it's specific facts that are confused between Anderson and Cavazos. I mean, you've got two clearly identified people in this case and in Cavazos, but you don't have that in Anderson. So Anderson is kind of not a good case. It's poorly written, and it's poorly reasoned. And it's your hope, yeah, it's your hope. But you've got confusion between specific intent and specific facts. And the specific facts here are totally different than your Anderson case. I would disagree. I would say that the facts are more akin to Anderson than Cavazos. And I also, if I may, I would like to ask a question. There's a question in Anderson whether there was a victim at all. In Anderson. Whether there was an attempt to shoot the victim at all in Anderson. And they said it's limited to the facts of that case. There's a question whether the alleged victim was even fired upon. Here there's no question. I understand that there was a question as to whether that victim was fired upon. But just as in Anderson, as here, there is no evidence. No one saw the shooting of Rivera. That's why the counsel went with reasonable doubt. Again, that out. And then if it's the self-defense, how are you going to self-defense against somebody being shot in the back while they're lying on the ground? Well, here's my point as to this jury instruction issue. If I may limit myself to this issue because I think I've spoken to that as well. We have a split of authority between Cavazos and Anderson. Respectfully, Justice Fitzgerald-Smith, I would disagree that Cavazos is the better reasoned case. In fact, I feel like the more recent Anderson case is. To your question, Justice House, the facts here, nobody sees the shooting of Rivera. It's just as likely. Now, yes, they're not identical cases, Anderson and the instant case. But the critical point is nobody sees Edmondson shoot Rivera. It's not actually the evidence supports maybe an intent to kill, a specific intent to kill Escobar. But as I said, transferred intent doesn't apply. So the specific intent to kill Escobar cannot support a conviction for attempt murder as to Rivera. So in that respect, I would say that this case is more factually akin to Cavazos. In Cavazos, we had an individual targeting gang members. It was the defendant and his girlfriend. They were standing right next to each other. Again, there's a little bit of a distance between Rivera and Escobar in this case. The court found- But counsel in Anderson, I think Justice House said this already, in Anderson, Aziz, the second supposed victim, didn't even know he was a victim. He didn't even know he'd been shot at. There was really almost no evidence in the record at trial that he was shot at. There was one person who'd written it down and then recanted it. And that was it. And so the jury had one person, was his name Hart maybe, had been shot. And this guy named Aziz who couldn't even testify himself that he was shot. He was driving away. So I heard gunshots. I don't know what direction they were fired in. Sure. I mean, that was the key, right, is that when the jury gets this instruction, they're like, well, what are we talking about? We only really know of one person who seems to be a target, which was Hart. And so the jury might think that's who an individual is. But here, there's no question there's a second target. Actually, that's not the only problem with the case. I would say that just as in it's true that we have a different fact pattern, but I don't think Anderson says that no fact pattern again. The question is whether there was a probability of juror confusion. I believe under these facts, there was a probability of juror confusion. Well, even if they knew, even if we take that the lay jury somehow understands one-act-one-crime principles and knows that you can't enter a conviction for the same individual, first-degree murder and the attempt murder relating to Escobar, what the jury is never told is that there needs to be a specific intent to kill, not only Escobar, but in point of fact, Rivera. The evidence at trial, no one testifies to seeing Rivera get shot. There is no specific, there is no evidence of a specific intent to kill Rivera as opposed to just Escobar. In closing arguments, didn't the state talk about the specific intent to kill Rivera? No, they talked about the two offenses. This is actually a key distinction between the case and Varga-Brunos, actually. In Varga-Brunos, there was only one victim, which is quite distinct from our case, and there was evidence of a targeted shooting, and in that case, the prosecutor actually specifically informed the jury that you have to find a specific intent to kill that named victim. There isn't any evidence of that. So you're saying in closing argument that the state never mentioned Rivera? No, I'm not saying that at all. I guess maybe I asked you the question poorly, but didn't the state make clear in the closing argument that this was about Rivera? They made clear that the charge related to Rivera. The charge is different than establishing as an element of the offense a specific intent to kill not only Escobar, but a specific intent to kill Rivera. So it's not okay. So the jury reading these instructions, the jury being told these, read the indictment, even relying on the closing arguments, which Anderson takes issue at, and there's a reason why, and I'd like to get into that and the poor reasoning of Caracas in a minute, but even if they're told all of that, they are not told that it's not sufficient justifying that he had a specific intent, that Edmondson had a specific intent to kill someone and then did a step, an act, in furtherance of the offense and committed attempted murder. That's the important distinction. As far as Cavazos, there's a number of problems with Cavazos. It relies principally on Malone. An earlier decision from 1976 in this case, in this court, I'm sorry, there were two charges at issue, though it's not entirely clear, aggravated assault of a police officer and attempt murder. The attempt murder victim is shot at first, and then in contrast to our case, later on, the defendant, she took the arresting officer. Thus, the targets of each of those offenses were clear. But even if you discount that, the court rejected that argument simply because the name of the victim is not an element of the offense. What the Malone court did not consider, and what is key, is that the specific intent to kill the named attempt murder victim is, in fact, an element of this offense. So despite the factual differences, and I would say that, in fact, this case is more akin to Anderson than any others, this court does not need to say, oh, and then the other problem with Cavazos is that they thought, first of all, they rejected the notion that the reading of the indictment, that Anderson rejected the notion that the reading of the indictment, that the prosecutor's arguments could make up for the error because they said the jury is also instructed that closing arguments in the indictment are not evidence. So even if they are told, as you indicated, Justice Ellis, our position would be that that's not enough, and it's with good reason, but they just said, well, we disagree with the first district on that without giving much of an explanation. But the other thing that Cavazos misinterpreted is they thought Anderson held any time that the attempt murder victim's name is not included, then it accounts for reversal. And that's not what this case requires this court to hold, nor what Anderson held in point of fact. This case was closely balanced, Your Honors. No one saw Edmondson shoot Rivera, and as I mentioned, they were not so close. But in fact, Rivera was in the line of fire and could have been shot by stray bullets specifically intended for Escobar. So if there are no further questions, we would ask that you remand and reverse for a new trial as a whole on Issue 1 or only attempt murder charge alone on Issue 2. Counsel, Your Honors, may it please the Court. In regards to the first issue, trial counsel was not ineffective for choosing not to address self-defense and second degree during closing arguments. Her all or nothing approach was reasonable strategy. Further, it is unlikely that the result of the trial would have been different as the evidence against the defendant was overwhelming and did not support either theory. Counsel's strategy during open close or during closing argument was to persuade the jury the defendant was innocent of all charges against him. This was a reasonable choice, and it has been held to be sound strategy. As the defendant has noted, it is certainly his constitutional right, as long as there is evidence, however slight, to request the jury instructions that were requested, that being self-defense and second degree, which in this case the Court ruled that there was evidence, however slight, and gave those instructions. However, it is within counsel's professional judgment as to which theory of defense to pursue during closing arguments. Counsel here cannot be deemed deficient for choosing to pursue the avenue that the evidence established the defendant was not the shooter and was not guilty of any offense. A review of the closing arguments, as counsel noted, briefly indicates how the people during open close argued that the defendant was guilty of first degree murder, beyond a reasonable doubt, and how there were no mitigating factors regarding self-defense or second degree. The people argued, we argued, how there was merely a couple of shoves exchanged, there were no guns, no one had any weapons, there were no threats made to the defendant when the defendant decided to remove his weapon and shoot both Escobar and Rivera. Trial counsel in turn argued that the people did not prove him guilty of any, not the defendant guilty of any offense, and she attacked the credibility of the witnesses and attacked the evidence of the people as a whole. She certainly argued that the video at Johnny O's did not depict the defendant actually holding a gun in his hand. She argued that Williams didn't specifically see the defendant shoot either Escobar or Rivera, and she clearly attacked the credibility of Rivera himself, our attempt murder victim, by arguing that he was a gang member, a cocaine user, a three-time convicted felon, and someone not worthy of being found credible. And she also attacked that there was no physical evidence to convict. There was no testimony to support the defendant had an unreasonable belief that he needed to defend himself against either victim. And because there was a lack of sufficient evidence to support self-defense or second degree, it was reasonable for her and it was a reasonable trial strategy for counsel to focus her closing argument on the theory that the eyewitnesses who identified the defendant as the shooter were not credible. Essentially, it's the best of both worlds. She argued this all-or-nothing approach, argued the defendant was not the shooter, he is not guilty of any crime, but at the same token also allowed, certainly the jury was allowed to find that if indeed the defendant was the shooter, that he could be found guilty of second degree murder. And based on these facts, it was counsel's defense and her theory, her strategy rather, that has to be deemed as reasonable professional judgment. And just because the jury did not accept her theory of defense during closing argument does not mean that she was deficient. And certainly not ineffective. I'd like to address, I believe counsel alluded to it briefly, by merely requesting, the defendant requesting self-defense in second degree does not mean that the defendant concedes to first degree murder. In fact, case law supports quite the opposite. A reasonable doubt is always a defense, right? Absolutely. It's not a former defense, it's just the argument that the state didn't carry its burden. Absolutely. And furthermore, in order to even get to second degree, the people have to prove the defendant guilty of first degree murder beyond a reasonable doubt, and then the burden shifts to the defendant to prove by a preponderance of the evidence that a mitigating factor exists. Here, clearly, counsel never conceded. In fact, she steadfastly maintains the defendant's innocence throughout the whole trial, and it was clear that that was her strategy from beginning to end, to argue that he was not guilty and that these people who identified the defendant as the shooter were not credible witnesses, also based on the evidence, based on the video, and everything else that was mentioned previously. Counsel, sorry to interrupt you, does the defendant have the right to insist on a lesser included offense? The defendant absolutely has the choice to request that as long as there's evidence, however slight. What about an affirmative defense? Does the defendant have the right to hold that card, or does counsel? To request, sure. And counsel also has the authority to do that as well, assuming that that is the defendant's wish. If it's a lesser included client, the defendant has to sign off on it, right? Correct. But do they have to sign off on an affirmative defense? I don't believe so, Judge, no. And furthermore. Is second degree murder a lesser included offense than first degree murder? It's not. It's allowed to be mitigated, but it's not technically a lesser included offense. Counsel, getting back to counsel's all or nothing approach, certainly as, again, counsel referred to, she could have argued both. She could have argued in the alternative. She could have argued both theories of defense. However, as Your Honors noted, based on the evidence, that would have seemed a little bit disingenuous in front of the jury to argue that there was all this evidence that established that he was not the shooter, and we ask that you find that he's not the shooter and he's not guilty, but in the same breath then also argue, but if you find that he is the shooter, then please find that he's guilty of second degree murder. Trial counsel was certainly in the best position, having participated in the jury's selection, having observed the demeanor of the jury throughout the whole trial to best determine what the best theory of defense was during closing arguments, and her all or nothing approach was certainly reasonable, and certainly there was no prejudice here. As mentioned earlier, the evidence against the defendant was overwhelming and did not support a verdict for second degree. No one had a weapon. There were no threats. The video showed a mere potential fist fight resulted in the defendant removing his weapon and shooting Escobar inches away from his face, execution style, if I may submit. Rivera's account of what occurred that evening alone was compelling, but together with William's grand jury testimony, his testimony at trial, how he saw the defendant remove the weapon, how he saw him pointed at Escobar's face, and then Williams ran, heard shots, turned around seconds later and saw Escobar on the ground. In addition to Garza's handwritten statement, her grand jury testimony, how she saw the ambulance right across from her home in front of Johnny O's, and how the defendant moments later appeared at her doorstep with Diaz and requested that he take her outside of the neighborhood, she take him outside of the neighborhood to a friend in Indiana. Certainly the evidence would not have supported a verdict for second degree, and certainly there is no probability that the alleged error would have affected the outcome of the trial. And as such, we ask that you affirm the defendant's convictions regarding the first issue. I can proceed to the second issue unless your honors have any questions. Regarding the second issue, the jury was properly instructed on attempt first degree murder where the trial court correctly did not veer away from the pattern jury instruction. And just a reminder to your honors that this, we're reviewing this under plain error as the defendant has also conceded. And the first step is obviously to determine if there was any clear or obvious error, and I submit that there was none in this case. Here we have two very distinct victims. There was not a situation of a phantom victim as in Anderson. We have a dead victim who was Escobar, and we have a surviving victim who testified in court, and that was Rivera. There was absolutely no need to veer away from the pattern jury instruction, and Maloney tells us that. And Maloney, the court ruled that the name obviously in the pattern jury instruction, that there is no specific spot to include the victim's name, that the victim's name is not an element of the offense. Do you agree it would have been clearer if they had put his name in there? I don't think so. Really? Justice Ellis, because it was very clear here who the attempt murder victim was. Rivera testified in court. He testified as to what transpired that evening of the shooting. It was made very aware to the jury from the very beginning when during the jury selection process the trial court read the charges, named Rivera as the victim of the attempt murder charges. Again, as you referenced earlier, during open calls, the people absolutely discussed the attempt murder of Rivera and all of the elements. I'm just asking you, would it have been clearer if they had put it in the jury instruction? I don't think it would have made a difference. Of course it would have been clearer, right? Of course it would have been. You can't deny that. Crystal clear, sure, but I don't think it would have made a difference. Would it have been an error for the judge to put the name in? I think that based on the facts of this case, yes, because it did not warrant a deviation. There has to be a reason to deviate from the pattern instruction. And here there was absolutely no reason to deviate. In Anderson, as was discussed previously, clearly there, there was an issue as Hasise didn't know who shot at him. He suffered no injuries. His vehicle did not have any bullet holes. And he did not know where the bullets or where the shots came from when he heard those shots. Furthermore, there was also an eyewitness, I believe in Anderson, who indicated that they observed the defendant actually shoot at another individual or aiming at another individual. So there certainly there was a potential attempt murder victim that was not even identified at trial. And that's what the evidence bore in that case. And it certainly would have been proper in Anderson for the trial court to deviate and actually include Hasise's name. However, here there was absolutely no need for the trial court to deviate from the pattern jury instruction. There were two crystal clear victims in this case, as was mentioned, and Cavazos is instructive where the defendant there, very similarly to here, was convicted of first-degree murder of one victim and attempt first-degree murder of another victim. And that attempt first-degree murder victim testified in court just like Rivera did here. Lozano, who was that attempt murder victim, testified as to the shooting and the circumstances surrounding his shooting, as did Rivera here. And the court in Cavazos held that it was not a closely balanced case because Lozano, that victim, testified in court. And there was absolutely no need to review under plain error. And I submit to this court that the same situation exists here. Furthermore, in addition to Cavazos and Maloney that I mentioned, there is also Villa Dovinos, which this court also distinguished Anderson for the same reasons. And, again, there was no juror confusion here. There was no misapprehension of the law, as it was very clear that there were two victims. The evidence, as indicated earlier, was overwhelming. And as far as the second prong of plain error, if we even get to that point, certainly the defendant has failed to establish that the jury instructions were fatally flawed, as there was no juror confusion, there was no juror misapprehension. In any way, it was very clear from the very beginning as to who these very distinct victims were regarding the attempt murder and the specific intent to actually kill Rivera regarding that specific charge. And we ask that you affirm the defendant's convictions. Thank you. A few points, just to clarify. First of all, under people who blocksmith, the Illinois Supreme Court has held that counsel does not have an authority to choose which lesser mitigated offenses or affirmative defenses a defendant would like to choose. That is clear. Contrary to what the state has said, there is no Illinois court case which has held that a trial attorney can, as a matter of trial strategy, usurp a defendant's constitutional right to present a lesser mitigated offense. The cases cited by the state, the defendant either affirmatively indicates his abandonment of those rights to go with an all or nothing approach. That is not the case here. Or there is a bench trial where the trial judge is presumed to know the law and can always find a lesser included offense. The state also points out that jury instructions were given, proper jury instructions. But they mean very little to a lay jury if they're not explained, particularly with respect to the second degree murder where the defendant bore the burden of persuasion. Also, not conceding, the defendant didn't concede first degree murder by requesting second degree murder instructions. That is permissible. A denial of first degree murder and requesting second degree murder and self-defense instructions are all completely consistent. Finally, I'd love to get to the prejudice. There was no evidence that, in fact, the shooting was inches away. There was no evidence, in fact, according to the medical examiner of Stippling. So though the medical examiner hypothesized that there would be close range firing, there was no evidence that there was inches away. But again, that wouldn't rule out the possibility that Edmondson had a reasonable or unreasonable belief that he needed to defend with lethal fire. And finally, as to the jury instruction issue, again, the state misunderstands the issue. It is not just okay that the jury understands the target or the subject of each of the offenses. They must know that in order to find defendant guilty of attempt murder, they have to find a specific intent to kill the named attempt murder victim. That is a clear element of the offense. I've already talked about Cavazos, Villalobos, Villalobinos, and Malone, so I will just rest on my arguments with respect to that. Thank you. Thank you. Thank you both. The briefs were very well done. The arguments were good. It's hard for the appellate defender to have to argue certain things. But she had her heart in it, and she did very good. So I just have to say you both did the best you could with the case. Thank you.